UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cr-00155-JPH-DML |
| | ) | |
| BYRON PIERSON, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION**

Defendant Byron Pierson has moved for release from custody and for dismissal of the indictments against him.  Dkt. [112].  For the reasons below, Mr. Pierson's motion is **DENIED**.

**I.**
**Facts & Background**

On April 15, 2018, while on supervised release ("SR") from a federal conviction in Case No. 1:12-cr-26, state officials arrested Mr. Pierson and charged him with, among other things, unlawful possession of a firearm by a felon.  *See State of Indiana v. Pierson,* 49G05-1804-F4-012670  (Ind. Super. Ct. Apr. 2018); dkt. 66*[1] at 1–2.

On April 19, 2018, the United States Probation Office filed a petition to revoke Mr. Pierson's SR.  Dkt. 66*.  The petition alleged that Mr. Pierson violated conditions of his SR, including that Mr. Pierson "shall not commit

---

[1] Asterisks indicate citations to the docket in 1:12-cr-26.

1

another federal, state, or local crime" and that he "shall not possess a firearm." *Id.* at 1–2.  On May 7, 2018, Magistrate Judge Lynch held a detention hearing. *See* dkt. 72*; dkt. 113*.  During that hearing, the government moved for detention based on the danger Mr. Pierson posed to the community, and counsel for Mr. Pierson and the government presented arguments and examined witnesses.  *See* dkt. 113* at 7–27.  At the end of the hearing, Magistrate Judge Lynch ordered Mr. Pierson detained.  *See id.* at 27–29.

On May 16, 2018, a federal grand jury indicted Mr. Pierson for violation of 18 U.S.C. § 922(g)(1)—Felon in Possession of a Firearm—based on the same conduct underlying the state offense and the SR violation.  Dkt. 1.[2]  At Mr. Pierson's initial appearance on that charge, Magistrate Judge Dinsmore ordered Mr. Pierson detained, referencing Magistrate Judge Lynch's order of detention in the 2012 case.  Dkt. 13.  The Court scheduled the jury trial to commence on July 9, 2018.  Dkt. 9.

Between June 21, 2018 and August 5, 2019, Mr. Pierson filed six motions to continue the trial date, and the Court granted each motion with an ends-of-justice finding under 18 U.S.C. § 3161(h)(7)(A).  *See* dkt. 18; dkt. 20; dkt. 22; dkt. 23; dkt. 25; dkt. 26; dkt. 27; dkt. 28; dkt. 29; dkt. 32; dkt. 34; dkt. 35.  Each motion to continue stated that Mr. Pierson had "been advised of his rights under the federal Speedy Trial Act 18 U.S.C. § 3161" and had

---

[2] On June 6, 2018, the state charges were dismissed in lieu of federal prosecution.  *See State of Indiana v. Pierson*, 49G05-1804-F4-012670.

"expressly consent[ed] that any time from the filing of [these] motion[s] to a new trial date is excluded for purposes of the Act."  *See id.*

Mr. Pierson's sixth motion to continue was filed one week before the scheduled trial date of August 12, 2019.  *See* dkt. 34.  The Court granted that motion with an ends-of-justice finding, vacated the trial date, and scheduled a status conference for August 12.  *See* dkt. 35.

At the status conference, counsel reported to the Court that the government's plea offer to Mr. Pierson would expire on August 14, 2019, so the parties would know whether a trial would be required by that date.  *See* dkt. 37.  The Court therefore scheduled a status conference on August 16, 2019, at which a "final and firm trial date" would be selected.  *See id.*

On August 14, 2019, Mr. Pierson filed a petition to enter a guilty plea and plea agreement, dkt. 39, so the Court vacated the August 16, 2019 status conference and did not set a new trial date, dkt. 40.  In his filing, Mr. Pierson agreed that "any delay resulting from the Court's consideration of this proposed guilty Plea Agreement, up to and including the date on which the Court either accepts or rejects [his] guilty plea, will be excluded in computing the time within which trial of this cause must commence, pursuant to 18 U.S.C. § 3161(h)(1)(G)."  Dkt. 39 at 1, 16–17.

On January 9, 2020, Mr. Pierson informed his appointed counsel that he was going to seek other representation.  Dkt. 47 ¶¶ 4–5.  The Court granted that counsel's motion to withdraw and appointed new counsel.  Dkt. 51.

More than nine months after filing the petition to enter the guilty plea and plea agreement, Mr. Pierson moved to withdraw it. Dkt. 75. The Court granted that motion on June 4, 2020, and rescheduled Mr. Pierson's trial for February 8, 2021. Dkt. 80. Mr. Pierson did not object.

On July 22, 2020, the government filed a superseding indictment charging Mr. Pierson with the same offense and adding that, before the time of possession, Mr. Pierson had "knowingly been convicted of a crime punishable by imprisonment for a term exceeding one year." Dkt. 81; *see Rehaif v. United States*, 139 S. Ct. 2191 (2019).

At Mr. Pierson's initial appearance on the superseding indictment on September 9, 2020, the government moved for pretrial detention under 18 U.S.C. § 3142(f)(1)(E) and 18 U.S.C. § 3142(f)(2)(A). Dkt. 92. The Court scheduled a detention hearing for September 16, 2020, and Mr. Pierson was ordered detained in the interim. *Id.* For reasons not apparent in the record, the detention hearing did not take place, *see* dkt. 122*; dkt. 124*, and Mr. Pierson was released on November 2, dkt. 112 at 2–3; dkt. 119 at 8.

The government moved for an arrest warrant on the 2018 Felon-in-Possession charge, dkt. 100, and on January 12, 2021 Mr. Pierson was arrested in Tennessee, *United States v. Pierson*, 3:21-mj-2675-1, (M.D. Tenn. 2021), dkt. 1. At his initial appearance in Tennessee, Mr. Pierson was ordered temporarily detained and a detention hearing was set for January 20. *Id.*, dkt. 2. On January 13, Mr. Pierson retained new counsel, dkt. 105; dkt. 106, and his second appointed counsel withdrew from the case, dkt. 107; dkt. 108. On

January 14, Mr. Pierson signed a Rule 5 waiver "request[ing] that [his] preliminary hearing and/or detention hearing be held in the prosecuting district, at a time set by the court." *Id.*, dkt. 3; *id.*, dkt. 7.

On February 1, Magistrate Judge Baker held a detention hearing, at which Mr. Pierson presented argument and evidence. Dkt. 117. Magistrate Judge Baker ordered Mr. Pierson detained, finding "[b]y clear and convincing evidence that no condition or combination of conditions of release [would] reasonably assure the safety of any other person and the community." Dkt. 118 at 2.

The Court held a telephonic status conference on February 4, at which the Court granted the government's motion to continue the jury trial until April, making an ends-of-justice finding under 18 U.S.C. § 3161(h)(7). Dkt. 120; *see* dkt. 104.

Mr. Pierson has filed a motion for immediate release from custody and for dismissal of the indictments against him. Dkt. 112. The government opposes both requests. Dkt. 119.

## II.
## Discussion

### A. Immediate Release

Following a person's federal arrest, the Speedy Trial Act requires a detention hearing to "be held immediately upon the person's first appearance

before the judicial officer unless that person, or the attorney for the Government, seeks a continuance." 18 U.S.C. § 3142(f).

Mr. Pierson argues that he "has been denied his right to release" under 18 U.S.C. § 3142 because he did not receive a timely detention hearing following his arrests in 2018 and 2021. Dkt. 112 at 3–4. The government argues that Mr. Pierson's motion for release should be denied because "the Court timely addressed the issue of detention" and that any delay does not warrant release. Dkt. 119 at 7–10.

Mr. Pierson has cited no authority supporting immediate release as a remedy for a detention hearing not taking place within the time limit prescribed by the Speedy Trial Act. *See* dkt. 112; dkt. 121. Instead, "a failure to comply" with the prompt hearing provision in 18 U.S.C. § 3142(f) "does not defeat the Government's authority to seek detention of the person charged" and does not "require[] the release of a person who is a . . . danger to other persons or the community." *United States v. Montalvo-Murillo*, 495 U.S. 711, 713, 718 (1990).[3] Moreover, since the magistrate judge here found by clear and convincing evidence that no condition or combination of conditions would "reasonably assure the safety of any other person and the community," dkt. 118 at 2, immediate release would not be appropriate even if it were available as a potential remedy for a delay, *see Montalvo-Murillo*, 495 U.S. at 720 ("The safety

---

[3] Mr. Pierson tries to distinguish *Montalvo-Murillo* by arguing that the government's delay was intentional rather than negligent. Dkt. 121 at 6. Because he has provided neither evidence supporting this factual claim nor case law supporting his legal assertion, the Court applies *Montalvo-Murillo*.

of society does not become forfeit to the accident of noncompliance with statutory time limits . . . . ").

Finally, the record demonstrates that Mr. Pierson is lawfully detained. Mr. Pierson was arrested in Tennessee on January 12, 2021 and had an initial appearance before a federal magistrate judge there the next day.  *See United States v. Pierson*, 3:21-mj-2675-1, (M.D. Tenn. 2021), dkt. 1; *id.*, dkt. 2.  At the hearing, Mr. Pierson was ordered temporarily detained, and a detention hearing was set for January 20.  *Id.*, dkt. 2.  On January 14, Mr. Pierson chose to delay a detention hearing when he signed a Rule 5 waiver "request[ing] that [his] preliminary hearing and/or detention hearing be held in the prosecuting district, at a time set by the court."  *Id.*, dkt. 3; *id.*, dkt. 7.  On February 1, shortly after Mr. Pierson returned to the Southern District of Indiana, Magistrate Judge Baker held a detention hearing, at which Mr. Pierson offered arguments, exhibits, and witness testimony.  Dkt. 117.

While 19 days elapsed between Mr. Pierson's initial appearance in the Middle District of Tennessee and his detention hearing in the Southern District of Indiana, "first appearance" in the context of 18 U.S.C. § 3142(f) means "the defendant's first appearance before a judicial officer in the district of prosecution, not the district of arrest."  *United States v. Murphy*, No. 1:11-MJ-00615-KPF, 2011 WL 5023534, at *2 (S.D. Ind. Oct. 19, 2011) (citing *United States v. Dominguez*, 783 F.2d 702, 704 (7th Cir. 1986)).  Because Mr. Pierson made his "first appearance" following his January 2021 arrest in this district

on February 1—the day of his detention hearing—there was no delay under
§ 3142(f).

Since Mr. Pierson has not shown that he is entitled to immediate release,
his motion is denied.

### B. Dismissal of Indictments

Mr. Pierson seeks dismissal of the indictments with prejudice based on
alleged violations of the Speedy Trial Act, the Sixth Amendment's speedy trial
guarantee, and the Eighth Amendment.[4]  Dkt. 112 at 4–6.  The government
denies that any violations have occurred.  *See* dkt. 119 at 10–16.

### 1. Speedy Trial Act

The Speedy Trial Act ("STA") requires a federal criminal trial to begin
within seventy days of the indictment or the defendant's appearance before a
judicial officer, whichever date last occurs.  18 U.S.C. § 3161(c)(1).  "This
restriction is not completely rigid, however: the STA excludes certain periods of
time from the seventy-day clock to provide the necessary flexibility to
accommodate pretrial proceedings that result in justifiable delay."  *United
States v. Ramirez*, 788 F.3d 732, 735 (7th Cir. 2015) (citation omitted).

---

[4] Mr. Pierson references his rights under the Fifth Amendment's due process clause but does
not develop a due-process argument.  *See* dkt. 112 at 1, 4–5; dkt. 121 at 1, 7.  As a result, any
separate due-process argument is waived.  *See United States v. Berkowitz*, 927 F.2d 1376,
1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped
arguments . . . are waived (even where those arguments raise constitutional issues)"); *Pharm v.
Hatcher*, 984 F.2d 783, 786 (7th Cir. 1993) ("The Due Process Clause . . . plays only a limited
role in protecting against oppressive prosecutorial delay.").  He also cites Federal Rule of
Criminal Procedure 48(b).  Dkt. 112 at 4–5.  But that "rule is driven by the same general
considerations as the Sixth Amendment speedy trial right" and Mr. Pierson "invokes it as a
functionally equivalent alternative to his Sixth Amendment argument," so this Court considers
the Sixth Amendment and Rule 48(b) together.  *See United States v. Bokhari*, 757 F.3d 664,
669 n.3 (7th Cir. 2014).

Here, the clock started on May 24, 2018 when Mr. Pierson made his initial appearance. Dkt. 13; *see* 18 U.S.C. § 3161(c)(1). The parties agree that the first 27 days after Mr. Pierson's initial appearance on the May 2018 indictment count toward the 70-day limit under the STA. *See* dkt. 119 at 11, 13; dkt. 121 at 5. Mr. Pierson also appears to agree that other than the 51-day period between October 26, 2020 and December 16, 2020, all other periods of delay are excludable under the STA. *See* dkt. 119 at 11–13; dkt. 121 at 1, 5; 18 U.S.C. § 3161(h). As to those 51 days, they are excluded from the STA calculation under 18 U.S.C. § 3161(h)(7) based on previous court orders that covered that period. *See* dkt. 80; dkt. 35.

When the Court issued its June 4, 2020 order resetting the trial date to February 2021, it implicitly made an ends-of-justice finding. While the Court did not state the ends-of-justice finding on the record at that time, *see* dkt. 80, it does so now, *see United States v. Parker*, 716 F.3d 999, 1006 (7th Cir. 2013) ("Although the Act is clear that the findings must be made, if only in the judge's mind, before granting the continuance" an "ends-of-justice findings need not be made contemporaneously on the record") (citation omitted).

First, the Court considered the factors identified in its previous order granting Mr. Pierson's sixth request for a continuance on August 6, 2019. *See* dkt. 35. In that order, the Court found that "the ends of justice served by the continuance outweigh[ed] the best interest of the public and Defendant in a speedy trial" to allow "both Defendant and the government [to] adequately prepare for and receive a fair trial, and attempt an agreed resolution." Dkt. 35.

9

The context of that continuance explains why it matters for the contested timeframe.

Before the August 6, 2019 order, Mr. Pierson's trial had already been continued five times at his request, with August 12, 2019 as the last trial setting. *See* dkt. 20; dkt. 23; dkt. 26; dkt. 28; dkt. 32. Rather than setting a new trial date following Mr. Pierson's sixth request, the Court set a status conference for August 12. *Id.*

At the August 12 status conference, counsel reported to the Court that the government's plea offer to Mr. Pierson would expire on August 14, 2019, so the parties would know by that date whether a trial date would be required. Dkt. 37. The Court therefore scheduled a status conference for August 16, 2019, at which time a "final and firm trial date" would be selected. Dkt. 37.

On August 14, 2019, Mr. Pierson filed a petition to enter a plea of guilty and plea agreement, dkt. 39, so the Court vacated the August 16, 2019 status conference and did not set a new trial date, dkt. 40.

On June 4, 2020, in response to Mr. Pierson's motion to withdraw his previously filed petition to enter a guilty plea and proceed to trial, the Court scheduled a jury trial for February 8, 2021, and Mr. Pierson did not object to that date. *See id.* As a result, the order vacating the last trial date, entered on August 6, 2019, remained in effect when the court rescheduled the trial for

February 2021.  That order's ends-of-justice findings therefore informed the
June 4, 2020 scheduling decision.[5]

The Court also made its ends-of-justice finding to continue the trial until
February 2021 based on the ongoing COVID-19 pandemic.  Among the factors
that a district court must consider when conducting the ends-of-justice
analysis is whether the failure to continue the proceeding would make the
proceeding "impossible" or otherwise "result in a miscarriage of justice."  18
U.S.C. § 3161(h)(7)(B).  Because the COVID-19 pandemic presented and
continues to present significant health risks and is exacerbated by large
gatherings of people, the prospect of summoning a pool of potential jurors and
conducting a trial without exposing jurors, litigants, counsel, and court staff to
substantial risks of infection was not reasonable when the Court rescheduled
Mr. Pierson's trial.  *See, e.g.*, *In re: Continued Court Operations Under the
Exigent Circumstances Created by COVID-19 and Related Coronavirus, General
Order* (May 12, 2020).

The Court's options were thus limited to either continuing the trial date
or dismissing the case.  The latter option would not have served the interests of
justice, so the ends of justice served by granting the continuance outweighed
the public's and defendant's interests in a speedy trial.  *See, e.g.*, *United States
v. Reese*, No. 19-CR-0149, 2020 WL 5097041, at *3 (D. Minn. Aug. 28, 2020)

---

[5] Although the Seventh Circuit has yet to decide the question, the August 6, 2019 order may
independently form the basis for exclusion under the STA.  *See, e.g.*, *United States v. Dignam*,
716 F.3d 915, 923 (5th Cir. 2013) ("[A] district court can decide to continue a trial indefinitely
under § 3161(h)(7) when it is . . . at least quite difficult, for the parties or the court to gauge the
length of an otherwise justified continuance."); *United States v. Lattany*, 982 F.2d 866, 881 (3d
Cir. 1992) (upholding 425-day open-ended continuance made with an ends-of-justice finding).

(collecting cases to support ends-of-justice exclusions based on "[t]he ongoing COVID-19 pandemic").

Because § 3167(h)(7) excludes the period that Mr. Pierson contests, Mr. Pierson has not shown a STA violation. As a result, his motion to dismiss the indictments on this ground is denied.

### 2. Sixth Amendment

The Sixth Amendment guarantees an accused "the right to a speedy and public trial." U.S. CONST. amend. VI. Courts "examine[] the following factors in assessing a speedy-trial claim under the Sixth Amendment: [w]hether the delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *United States v. Robey*, 831 F.3d 857, 863 (7th Cir. 2016) (citation omitted). As to the first factor, courts consider delays "that approach one year presumptively prejudicial," but the remaining factors can outweigh that presumption. *United States v. Ellis*, 622 F.3d 784, 791 (7th Cir. 2010), *as amended* (Sept. 27, 2010).

Here, the delay from the original indictment in May 2018 to the scheduled jury trial date in April 2021 is approximately 35 months. *See* dkt. 1; dkt. 120. The government does not contest that the delay here is "uncommonly long" and thus is "presumptively prejudicial," but contends that the other factors outweigh that presumption. Dkt. 119 at 13–14.

12

The record shows that Mr. Pierson is responsible for most of the delay. Starting with the motion filed on June 21, 2018, Mr. Pierson filed six motions to continue the trial date. Dkt. 18; dkt. 22; dkt. 25; dkt. 27; dkt. 29; dkt. 34. Each motion stated that Mr. Pierson had "been advised of his rights under the federal Speedy Trial Act 18 U.S.C. § 3161" and had "expressly consent[ed] that any time from the filing of [these] motion[s] to a new trial date is excluded for purposes of the Act." *See id.*[6] In August 2019, after receiving five continuances, Mr. Pierson filed a petition to enter a guilty plea and plea agreement. Dkt. 39. In that agreement, Mr. Pierson agreed that "any delay resulting from the Court's consideration of this proposed guilty Plea Agreement, up to and including the date on which the Court either accepts or rejects [his] guilty plea, will be excluded in computing the time within which trial of this cause must commence, pursuant to 18 U.S.C. § 3161(h)(1)(G)." *Id.* at 8–10, 16–17.

Mr. Pierson also chose to change counsel twice. On January 9, 2020, Mr. Pierson informed his first appointed counsel that he was going to seek other representation. Dkt. 47 ¶¶ 4–5. The Court granted that counsel's motion to withdraw and appointed new counsel. Dkt. 51. About a year later, Mr.

---

[6] Although Mr. Pierson argues that his previous counsel ignored his suggestions for how the case should proceed, dkt. 121 at 2–4, parties are generally bound by the actions or lack of action by their counsel, *see Ashburn v. Korte*, 761 F.3d 741, 753 (7th Cir. 2014) ("[B]ecause the attorney is the defendant's agent when acting, or failing to act, in furtherance of the litigation, delay caused by the defendant's counsel is also charged against the defendant.") (citation omitted).

Pierson retained new counsel, dkt. 105; dkt. 106, and the second appointed counsel was granted leave to withdraw, dkt. 107; dkt. 108.

Moreover, Mr. Pierson did not assert his right to a speedy trial "in due course." *Robey*, 831 F.3d at 863.  He did not raise a speedy-trial issue during either the May 17, 2019 or August 12, 2019 status conferences. Dkt. 32; dkt. 37; dkt. 58; dkt. 61.  Mr. Pierson also did not assert his right to a speedy trial or raise the issue during the January 16, 2020 *ex parte* hearing on his request for new counsel, dkt. 49, or in hearings related to his SR violation, *see* dkt. 119*; dkt. 124*; dkt. 131*; dkt. 133*; dkt. 146*.  Only after filing six motions to continue the trial date, withdrawing his petition to enter a guilty plea and plea agreement nearly a year after filing it, and changing counsel twice did Mr. Pierson assert his right to a speedy trial.

And beyond a conclusory assertion that delay "denied him his Sixth Amendment Right to effectively defend the allegations against him," dkt. 121 at 7, Mr. Pierson has not explained how he has suffered actual prejudice.  In *Barker v. Wingo*, the Supreme Court described three types of prejudice that defendants may face from a long pretrial delay: "(i) . . . oppressive pretrial incarceration; (ii) . . . anxiety and concern of the accused; and (iii) the possibility that the defense will be impaired."  407 U.S. 514, 532 (1972).  Delay can impair a person's defense if, for example, "witnesses die or disappear during a delay," "defense witnesses are unable to recall accurately events of the distant past," or if a defendant "is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense."  *Id.* at 532–33.

14

Mr. Pierson mentions only that his defense will be impaired and offers just one sentence in his reply brief addressing it. *See* dkt. 121 at 7. When a defendant "relies on the generalized presumption of evidentiary prejudice that results from . . . lengthy pretrial delays," a defendant's argument "is entitled to lesser weight than prejudice supported by tangible impairments to the defense." *United States v. Patterson*, 872 F.3d 426, 436 (7th Cir. 2017). Here, Mr. Pierson has not pointed to any "tangible impairments" to his defense caused by the delay and has not otherwise shown that prejudice from an impaired ability to defend his case outweighs the other Sixth Amendment factors working against his motion to dismiss.

At bottom, Mr. Pierson caused most of the delay, did not assert his right to a speedy trial before his January 2021 motion,[7] and has not shown tangible prejudice resulting from the delay. Given these facts, the delay did not violate Mr. Pierson's constitutional right to a speedy trial. *See, e.g.*, *O'Quinn v. Spiller*, 806 F.3d 974, 976 (7th Cir. 2015) (holding that 42-month delay did not violate defendant's speedy trial right).

### 3. Eighth Amendment

Last, Mr. Pierson argues that the indictment must be dismissed under the Eighth Amendment because he allegedly served too much time imprisoned for his SR violation. Dkt. 112 at 1; dkt. 121 at 5, 7. Even if his underlying claim is true, which this order does not address, Mr. Pierson has not explained

---

[7] In contrast, Mr. Pierson asserted his right to a prompt SR violation hearing on June 12, 2020. *See* dkt. 109*; dkt. 119 at 15 n.9.

why extended incarceration on another sentence has any bearing on this criminal case. *See id.* Moreover, Mr. Pierson has cited no authority showing that the Eighth Amendment supports the remedy he seeks. *See id.*; *cf. Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (stating Eighth Amendment standards for *civil* liability for defendant being "held . . . beyond the term of his incarceration without penological justification"). Mr. Pierson has thus not shown that the Eighth Amendment requires dismissal of the indictments against him.

### III.
### Conclusion

For the reasons discussed above, Mr. Pierson's motion for immediate release and dismissal of the indictments against him is **DENIED**. Dkt [112].

**SO ORDERED.**

Date: 3/8/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

16

Distribution:

Joseph R. Eggert
ATTORNEY AT LAW
tlyons@600mainlaw.com

M. Kendra Klump
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kendra.klump@usdoj.gov

Kelsey Massa
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kelsey.massa@usdoj.gov

Patrick J. Renn
prenn@600westmain.com